## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ANA MELENDEZ, | : | No. 3:25-CV-371 |
| | : | |
| Plaintiff | : | (Caraballo, M.J.) |
| | : | |
| v. | : | |
| | : | |
| FRANK J. BISIGNANO,[1] | : | |
| Commissioner of Social | : | |
| Security Administration, | : | |
| | : | |
| Defendant | : | |

## MEMORANDUM

Pending before the Court is the appeal by Plaintiff Ana Melendez

of the decision by the Commissioner of Social Security Administration

("the Commissioner") to deny her application for disability benefits.  For

the reasons set below, the Commissioner's decision is affirmed.

## I.    Introduction

Melendez seeks judicial review of the Commissioner's final

decision to deny her applications for disability benefits under Titles II

and XVI of the Social Security Act.  The Court has jurisdiction pursuant

---

[1] Frank Bisignano was confirmed as the Commissioner of the Social Security Administration on May 6, 2025.  Pursuant to Federal Rule of Civil Procedure 25(d) and Title 42, United States Code, Section 405(g), Bisignano is substituted as the defendant in this suit.

to Title 42, United States Code, Section 405(g), and Title 28, United Sates Code, Section 636(c)(1).

Melendez challenges two alleged errors that Administrative Law Judge ("ALJ") Richard Guida committed when determining that she was not disabled under the Social Security Act. Namely, Melendez claims that the ALJ: (1) failed to reconcile the opinions provided by Drs. John Gavazzi and Jamie King in formulating her residual functional capacity; and (2) erred in using that residual functional capacity to conclude that Melendez may work as a marker, a mail sorter, or a router. Doc. 14 at 1, 9–12. The matter is fully briefed and ripe for decision.

As explained below, ALJ Guida's conclusion on the first issue was supported by substantial evidence in the record, coupled with sufficient reasoning to permit meaningful judicial review. Accordingly, given that the second challenge is premised on the validity of the first alleged error, the Court affirms the Commissioner's decision to deny Melendez's claims for social security disability benefits.

## II.  Background

On April 18, 2023, Melendez applied for social security disability benefits, alleging complete disability from her arthritis in hands and knees, fibromyalgia, depression, anxiety, and post-traumatic stress disorder.  Tr.[2] 61.  The Social Security Administration ("SSA") denied Melendez's applications on September 15, 2023.  *Id.* at 107–18. Melendez requested reconsideration, but her application was denied again on January 31, 2024.  *Id.* at 121–35.  Melendez accordingly requested a hearing on February 5, 2024.  *Id.* at 136–37.  The SSA granted the request, *id.* at 138–40, and held an administrative hearing on September 4, 2024.  *Id.* at 40–58.

Following the hearing, on October 31, 2024, the ALJ issued a decision concluding that Melendez was not disabled between the operative dates of September 1, 2019, through the date of the decision. *Id.* at 14–33.  Melendez unsuccessfully appealed the denial to the SSA's Appeals Council on January 3, 2025.  *Id.* at 1–3.  The instant appeal to the District Court followed.  Doc. 1.  Melendez initiated this action with

---

[2] The administrative record, referred to herein as "Tr.," encompasses Docs. 13, 13-1, 13-2, 13-3, 13-4, 13-5, 13-6, and 13-7.

the Court on February 28, 2025. *Id.* The Commissioner provided the transcripts from the disability proceedings on May 28, 2025. Docs. 12–13. The parties then filed their respective briefs, leaving this matter ripe for decision. Docs. 14–15, 17.

## III. Discussion

### A. Standard of Review

Review of the Commissioner's decision denying a claimant's application for social security disability benefits is limited to determining whether the factual findings of the final decisionmaker are supported by substantial evidence in the record. *See* 42 U.S.C. § 405(g); *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 200 (3d Cir. 2008). Substantial in this context is "more than a mere scintilla of evidence but may be less than a preponderance." *Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir. 1988) (citation omitted). Put more pointedly, it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). In an adequately developed record, this can mean "something less than the weight of the evidence, and the possibility of drawing two inconsistent

4

conclusions from the evidence does not prevent [ALJ Guida's decision] from being supported by substantial evidence." *Consolo v. Fed. Mar. Comm'n.*, 383 U.S. 607, 620 (1966) (citations omitted).

Under this deferential standard, "[f]actual findings which are supported by substantial evidence must be upheld." *Ficca v. Astrue*, 901 F. Supp. 2d 533, 536 (M.D. Pa. 2012) (citations omitted); 42 U.S.C. § 405(g). This Court's role is not to reweigh the evidence and make factual determinations, but to simply review the record and ensure that the ALJ provided "a discussion of the evidence and an explanation of reasoning for her conclusion sufficient to enable meaningful judicial review." *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 504 (3d Cir. 2009) (citations and quotations omitted). An ALJ meets that standard by stating "in her decision which evidence she has rejected and which she is relying on as the basis for her finding." *Schaudeck v. Comm'r of SSA*, 181 F.3d 429, 433 (3d Cir. 1999) (citations omitted). Moreover, when there is countervailing evidence, an ALJ must "give some reason for discounting the evidence she rejects." *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999) (citation omitted); *see also Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993) (holding that substantial evidence

standard is unmet when ALJ fails to resolve conflicts created by countervailing evidence).

Here, ALJ Guida's factual findings were supported by substantial evidence in the record, and the reasoning underlying those conclusions was sufficiently articulated to permit judicial review.

### B.    Evaluation of Opinions by Drs. Gavazzi and King in Formulation of Residual Functional Capacity[3]

Melendez first contends that, as ALJ Guida found the opinions of psychological consultants Drs. Gavazzi and King "persuasive," he erred by failing to include the mental limitations opined by the two psychologists when crafting Melendez's residual functional capacity. Docs. 14 at 9–12; 17 at 1–2. As set forth below, the ALJ's evaluation of the persuasiveness of those opinions sufficiently assessed their supportability and consistency, and his findings were supported by substantial evidence.

When evaluating a medical opinion, an ALJ is required to assess the level of support and consistency the opinion has against the record.

---

[3] The Court notes that, though Melendez claims that the first alleged error arises out of "Step Four," Doc. 14 at 11, as explained in ALJ Guida's opinion, Tr. 19, determination of a claimant's residual functional capacity occurs between the third and fourth steps of the five-step sequential analysis.

20 C.F.R. § 404.1520c. Supportability "increases as the relevance of the objective medical evidence and explanations presented by the medical source increases." *Vellone v. Saul*, 2021 WL 319354, at *6 (S.D.N.Y. 2021), *report and recommendation adopted*, 2021 WL 2801138 (S.D.N.Y. 2021) (citing 20 C.F.R. § 404.1520c(c)(1)). The consistency assessment is "an all-encompassing inquiry focused on how well a medical source is supported, or not supported, by the entire record." *Clay v. Kijakazi*, 2022 WL 13989015, at *3 (N.D. Miss. 2022) (quoting 20 C.F.R. § 404.1520c(c)(1)).

Since an ALJ's duty of articulation requires just "some indication" of their consideration of probative evidence, *Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 121 (3d Cir. 2000), an ALJ's assessment of a medical opinion's consistency and supportability "need not discuss every piece of evidence in the record," and instead only requires the building of "an accurate and logical bridge between the evidence and the result." *Gamret v. Colvin*, 994 F. Supp. 2d 695, 698 (W.D. Pa. 2014) (quotation omitted) (citations omitted). Further, in assessing whether an ALJ has provided an adequate analysis for rejecting or accepting an opinion, the court must look at the opinion as a whole, not only the part directly

7

addressing the particular opinion. *See Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) ("the ALJ's decision, read as a whole, illustrates that the ALJ considered the appropriate factors in reaching the conclusion that [claimant] did not meet the requirements for any listing[.]").

The sufficiency of an evaluation turns on the extent to which its reasoning is driven by an ALJ's read of the evidence—and the court's ability to discern that evidentiary reasoning. *See, e.g., Price v. Astrue*, 401 F. App'x 985, 986 (5th Cir. 2010) ("The ALJ does not need to comment on every piece of evidence, but only must build an accurate and logical bridge between the evidence and the final determination.") (citing *Glomski v. Massanari*, 172 F. Supp. 2d 1079, 1082 (E.D. Wis. 2001)); *Acosta Cuevas v. Comm'r of Soc. Sec.*, 2021 WL 363682, at *15 (S.D.N.Y. 2021), *report and recommendation adopted sub nom.*, 2022 WL 717612 (S.D.N.Y. 2022) ("[t]he ALJ must provide a reviewing Court with a sufficient explanation to ensure that they have complied with the legal procedures controlling their decision and cannot ignore or mischaracterize evidence.").

Here, ALJ Guida's findings on Melendez's mental limitations were based on not only opinion evidence, but also on other parts of the

8

medical record.  More specifically, the ALJ premised his analysis of the

claimant's mental capacities by stating that:

> Turning to the claimant's mental health symptoms, there is no documentation of inpatient psychiatric hospitalization, participation in a partial hospitalization[,] or intensive outpatient program or emergency treatment for mental health symptoms.  There is no documentation of medication management with a psychiatric provider.  The claimant realized improvement in therapy from which she was discharged due to noncompliance and has continued to manage symptoms with medications prescribed by her primary care provider.  Additionally, the claimant's therapy provider noted that marijuana use can impact the claimant's mental status with the claimant initially appearing resistant to making changes regarding her marijuana use.  Aside from the consultative examinations, notes of treatment with providers have not documented the claimant's exhibition of significant behavioral, attentional, cognitive[,] or memory issues.  These considerations support the claimant's ability to perform work activities within the residual functional capacity assigned.

Tr. 29.

These findings were based on parts of the record that Melendez

overlooks in her appeal.  For example, the discussion on discharge due

to noncompliance is based on documents observing that, "[o]n June 5,

2023, the claimant was noted to be exhibiting stability with her mental

health," and thus "was discharged . . . due to noncompliance on June 19,

2023[.]"[4] *Id.* at 26. The record also indicated that Melendez was "referred for continued physical therapy and pain management[,]"[5] *id.*, allowing ALJ Guida to find that she continued to manage symptoms with medications. *Id.* at 29. Further, the record repeatedly cites the claimant's history of marijuana use, *id.* at 488, 576, 858, 902, 905, with some documents noting the possibility of the substance interfering with her treatment, as well as her initial resistance to curtailing usage. *Id.* at 901, 904. The ALJ noted these incidents as well, before proceeding with the non-opinion evidence on Melendez's mental limitations. *Id.* at 25 ("possible contribution of biologic factors such as daily use of marijuana"), 26 ("asked not to use marijuana[,]" "some resistance regarding marijuana use").

The discussion on non-opinion evidence was followed by examinations of opinions provided by psychologists and consultants, including Drs. Gavazzi and King. The ALJ's evaluation of the opinions on Melendez's mental limitations found the opinions of Drs. Gavazzi and King persuasive—"to the extent that they are suggestive that

---

[4] Based on Exhibit B18F. *Id.* at 882–916.
[5] Based on Exhibit B16F. *Id.* at 849, 854, 857, 861.

mental impairments pose no greater than moderate functional limitations upon the claimant." *Id.* at 28–29.  More specifically:

> As for the opinion evidence, the undersigned considered the opinion of John Gavazzi, Psy.D., the State Agency psychological consultant, who indicated on September 8, 2023 that the claimant has mild limitation in understanding, remembering or applying information, interacting with others and adapting or managing herself, moderate limitation in concentrating, persisting or maintaining pace and is able to perform one (1) or two (2) step routine tasks in a stable environment (Exhibit B2A).  The undersigned considered the opinion of Jamie King, Ph.D., the State Agency psychological consultant, who indicated on January 30, 2024 that the claimant has mild limitation in understanding, remembering or applying information, interacting with others and adapting or managing herself, moderate limitation in concentrating, persisting or maintaining pace and is able to manage, understand and complete simple one (1) or two (2) step tasks (Exhibit B6A).

*Id.*  These summaries are corroborated by documents included in the record. *Id.* at 63 (Dr. Gavazzi's evaluation of mental capacities), 66 ("[t]he claimant can perform one- and two-step tasks."), 84 (Dr. King's evaluation of mental limitations), 88 ("simple one or two step tasks.").

In addition to the opinions provided by Drs. Gavazzi and King, ALJ Guida reviewed the materials provided by Drs. Kathleen

11

Ledermann and Leah Bielski, two consultative examiners whom Melendez visited:

> The undersigned considered the opinion of Kathleen Ledermann, Psy.D., the consultative examiner, who indicated on August 29, 2023 that the claimant has mild to moderate limitation in understanding, remembering and carrying out complex instructions and making judgments on complex work related decisions, mild limitation in interacting appropriately with the public, coworkers and supervisors and responding appropriately to usual work situations and to changes in a routine work setting and no to mild limitation in understanding, remembering and carrying out simple instructions and making judgments on simple work related decisions (Exhibit B9F). The undersigned considered the opinion of Leah Bielski, Psy.D., the consultative examiner, who indicated on August 17, 2022 that the claimant has moderate limitation in understanding, remembering and carrying out instructions, interacting appropriately with the public, coworkers and supervisors and responding appropriately to usual work situations and to changes in a routine work setting (Exhibit B8F).

*Id.* at 29.

Then, after considering the opinion and non-opinion evidence together, the ALJ concluded that:

> To the extent that the opinions are suggestive that mental impairments pose no greater than moderate functional limitations upon the claimant, they are **supported** by the notations along with the opinions of the claimant's medication management with a primary care provider and failure to attend or consistently to attend therapy that resulted in discharge from therapy. The opinions are **consistent** with the absence of documentation of inpatient psychiatric

12

hospitalization, participation in a partial hospitalization or intensive outpatient program or emergency treatment for mental health symptoms, the absence of documentation of medication management with a psychiatric provider, the improvement the claimant realized in therapy from which she was discharged due to noncompliance, the claimant's continued to manage symptoms with medications prescribed by her primary care provider and notes of treatment that have not documented the claimant's exhibition of significant behavioral issues or significant attentional, cognitive or memory issues. For these reasons, these opinions are **persuasive to the extent that they are suggestive that mental impairments pose no greater than moderate functional limitations upon the claimant**. Specifically, the opinions of Dr. Gavazzi, Dr. King, and Dr. Ledermann are persuasive, and the opinion of Dr. Bielski is partially persuasive.

*Id.* (emphases added). Based on these findings, ALJ Guida, in formulating Melendez's residual functional capacity, determined that she "retains the mental capacity to perform simple and routine tasks involving only simple work[-]related decisions." *Id.* at 23.

As discussed above, the ALJ's assessment of the opinions provided by Drs. Gavazzi and King found them persuasive "to the extent that they are suggestive that mental impairments pose no greater than moderate functional limitations upon the claimant," and found them supported by and consistent with the non-opinion evidence. *Id.* at 29. The analyses leading to those conclusions demonstrate that ALJ Guida

13

considered the relevant evidence for consistency and supportability, and built accurate and logical connections between the relevant evidence and the result, thus enabling the Court to review his reasoning. *See Gamret*, 994 F. Supp. 2d at 698; *Jones*, 364 F.3d at 505.

Put simply, contrary to Melendez's assertions that ALJ Guida "failed to" "explain how the 'persuasive' opinions that [Melendez] could only perform one to two step tasks were somehow commensurate with simple work," Doc. 14 at 12, and instead only "put all psychiatric medical opinions in one paragraph[,]" Doc. 17 at 2, the ALJ undertook a comprehensive evaluation of both opinion and non-opinion materials in defining Melendez's residual functional capacity that explained how Melendez could perform simple work.

A related contention presented by Melendez takes umbrage with the perceived discrepancy between the limitations opined by Drs. Gavazzi and King and the residual functional capacity formulated by the ALJ, and contends that the ALJ erred in finding that Melendez may work as a marker, a mail sorter, or a router. Docs. 14 at 11–12; 17 at 1–2. More specifically, the claimant reasons that the opinions provided by Drs. Gavazzi and King indicate that jobs involving reasoning level 1 (as

defined by the Dictionary of Occupational Titles, *see* Appendix C – Components of the Definition Trailer, 1991 WL 688702 (2016)) "more closely correspond[]" to her limitations, as opposed to ones requiring reasoning levels 2 (marker, router) and 3 (mail sorter). Doc. 14 at 11– 12.

This argument is unavailing for at least two reasons. First, as Melendez herself acknowledges, *id.* at 11, the Court of Appeals held that "[w]orking at reasoning level 2 would not contradict the mandate that [a claimant's] work be simple, routine[,] and repetitive." *Money v. Barnhart*, 91 F. App'x 210, 215 (3d Cir. 2004). Given that both Drs. Gavazzi and King opined that Melendez may perform simple and routine tasks, and the residual functional capacity defined by ALJ Guida echoes their opinions, the Court sees no reason to deviate from the appellate holding and, by extension, outcome. *See id.*

Second, to the extent that Melendez invites the Court to reweigh the evidence and make its own determination as to whether the ALJ was correcting in holding that Melendez may work as a marker, a mail sorter, or a router, the Court cannot do so. "Courts are not permitted to re-weigh the evidence or impose their own factual determinations."

15

*Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011). Since ALJ Guida assessed the weight of the evidence and cited to "such relevant evidence as a reasonable mind might accept as adequate to support" her conclusions concerning Dr. Gavazzi's and Dr. King's opinions, *Pierce*, 487 U.S. at 565, Melendez's disagreement with those determinations does not warrant remand. Instead, the ALJ's evaluation is supported by substantial evidence in the record and is sufficiently articulated to permit judicial review, mandating affirmance. *See Gamret*, 994 F. Supp. 2d at 698; *Ficca*, 901 F. Supp. 2d at 536 ("Factual findings which are supported by substantial evidence *must* be upheld.").

As ALJ Guida's overarching approach to defining Melendez's residual functional capacity was premised on substantial evidence and sufficiently articulated to permit judicial review, it will not be disturbed. *See Jones*, 364 F.3d at 505; *Johnson*, 529 F.3d at 200.

## IV.    Conclusion

Accordingly, the Court affirms the Commissioner's decision. A separate Order shall be issued.

16

Date:  March 30, 2026          *s/ Phillip J. Caraballo*
                               Phillip J. Caraballo
                               United States Magistrate Judge

17